SARTAIN, Judge.
This is a suit for collision damages to a 1969 Bellanca Viking model 300 private airplane owned by plaintiffs and insured under a policy issued by defendant to the owners. Defendant appeals from a judgment awarding plaintiffs damages in the amount of $14,845.51 less the deductible amount of $250.00 provided in the policy.
The claim for collision damages arose out of an accident which occurred at Thompson Field in Jackson, Mississippi, when the plane crashed short of the landing strip while attempting a landing.
The plane was insured by Ranger Insurance Company under a policy providing “in motion” collision coverage. The loss was duly reported to defendant who retained Mr. Charles England of the Bossier Adjustment Company in Bossier City, Louisiana, to process this claim. Mr. England in turn retained Mr. Ray Harvey, who is engaged in the aircraft repair business in Shreveport, Louisiana, to transport the craft to Shreveport for the purpose of inspecting and submitting an estimate for the repair of the plane. Mr. Harvey brought the craft to Shreveport by truck and in conjunction with Mr. England inspected the plane and prepared a written estimate of the damages. The estimate of the cost of repairs submitted by Mr. Harvey totaled $5,141.27, including $300.00 transportation costs for bringing the plane to Shreveport from Jackson, Mississippi.
Upon learning of Mr. Harvey’s estimate plaintiffs decided to secure another estimate and authorized Mr. Norman Magee, one of the owners and also plaintiffs’ attorney in this matter, to retain Mr. Harvey to transport the damaged craft to the Bellanca repair shop in Plainview, Texas, the authorized repair shop for Bellanca Aircraft, manufacturers of the plane. Bellanca personnel examined and inspected the airplane and submitted an estimate for the repair of damages in the amount of $14,845.51. Bellanca later repaired the craft for the amount stated in the estimate.
Neither the plaintiffs nor defendant ever obtained any other estimates. Ranger Insurance Company submitted its proof of loss for signature with an offer to pay based on the Harvey estimate. Mr. Magee, on *881 behalf of all the plaintiffs, submitted a proof of loss in the amount of $8,952.51 which -was refused but which was also later found to have been in error.
After attempts to finalize the matter failed, the owners filed suit on September 2, 1971, for damages in the amount of the estimate of repairs submitted by Bellanca and for penalties and attorney’s fees. Plaintiffs also sought recovery for certain other items of damages which were claimed to have resulted from the defendant’s refusal to pay the claim. Defendant answered, tendering $4,891.27 into the registry of the Court based on the Harvey estimate of $5,141.27 less the $250.00 deductible amount. Trial was held on April 27, 1972, and judgment was rendered awarding plaintiffs damages based on the Bellanca estimate and rejecting plaintiffs’ other claims for damages, penalties and attorneys’ fees. Defendant was granted a sus-pensive appeal from this judgment. On October 16, 1972, an order was signed allowing plaintiffs to withdraw the funds on deposit in the registry of the court, which funds were received and accepted by plaintiffs on November 1, 1972.
From that portion of the judgment which denied the claims for penalties, attorney’s fees, and other items of damage allegedly sustained due to defendant’s refusal to pay the claim, plaintiffs have not appealed nor have they answered the appeal of defendant. Therefore, the only issue before us is the correctness of the award made on the main demand based upon the Bellanca estimate.
Defendant asserts that the trial court erred [1] in allowing damages based only upon an “estimate”, [2] in failing to require proof of loss under the conditions of the insurance policy, and [3] in failing to accept the estimate submitted by Mr. Ray Harvey as the proper measure of damages.
Defendant contends that since the airplane had actually been repaired plaintiffs should have proved the actual cost of the repairs at trial by producing bills, work orders, invoices and time cards as the “best evidence” available by which to prove their claim.
Plaintiffs called Mr. L. D. Mitchell, service manager of Bellanca Sales Company, to prove their damages. Mr. Mitchell testified that he prepared the written estimate of repairs for Bellanca and actually supervised the repair work carried out on the craft at the Bellanca repair shop. When asked whether he had in his possession actual bills rendered, work orders, invoices, and time cards relating to the repair of this aircraft, Mr. Mitchell testified that he had not brought them with him to the trial but they were in his files in the Bel-lanca offices in Texas. It is upon this testimony that defendant bases its contention that the “best evidence” of the actual cost of the repairs was available to the plaintiffs but was not produced at trial. Defendant thus argues that plaintiffs have failed to prove damages over and above the amount which was deposited by defendant below.
It has been held that repair estimates alone can properly serve to prove recoverable damages. Jackson v. Firemen’s Insurance Company, 86 So.2d 220 (1st La.App.1956); Hughes v. Louisiana Power and Light Company, 94 So.2d 532 (1st La.App.1956). However, it has also been stated that if the damaged property has been restored to its former condition by repair, the proper basis for assessing damages is the repair bill itself. Lambert v. Allstate Insurance Company, 195 So.2d 698 (1st La.App.1967); Gambrell v. Audubon Insurance Company, 115 So.2d 727 (Orl.La.App.1959); Foshee v. McGee, 87 So.2d 754 (2nd La.App.1956). In Lambert v. Allstate Insurance Company, supra, it was also stated 195 So.2d at page 700 that:
“Where invoices, statements or records of accounts expended in the repair of damages are in the possession of plaintiff or are available or attainable, such records constitute the best evidence and should be offered in proof of plaintiff’s *882 claim. In the event such evidence is not available or attainable, proof of loss should be made by offering the testimony of the person furnishing the material, labor or supplies when such testimony may be produced.”
While pur review of the record and the evidence reveals that the actual repair bill was not produced at trial, the testimony of Mr. Mitchell clearly establishes that the Bellanca estimate is identical in contents and amount to that which would be shown on the repair bill had it been produced. His testimony in that regard is as follows:
“Q. Was the aircraft subsequently repaired by your company?
A. Yes, sir. Yes, sir, the airplane was repaired by our company.
Q. Did the actual repair cost reflect approximately the same as you furnished on your estimate of repairs ?
A. Yes, sir, it did. . . .”
íjí ‡ sji s{c ifc
“Q. I don’t believe we’ve ever heard yet just what the actual cost of repairs were on this according to your figures. Do you have that?
A. Well, I haven’t got it totaled up here but I think — I should have brought my glasses with me today. If I might, let me ask the lady to read this total on the back of the bill for me because I forgot to bring my glasses with me.
(The reporter read the amount, $14,845.51)
THE COURT: That’s the amount of the estimate.
Q. ' That’s your actual cost of repairs ?
A. Yes, sir.
Q. Then your actual cost of repairs is identical to your estimate, is that correct ?
A. That’s right.”
* % 5ji 5}£ iji
“Q. Now prior to coming to court today did you check your records at the company to determine whether or not the repairs was the same as you furnished on your estimate?
A. No, I didn’t.
Q. Do you know of your own knowledge as to whether or not — ■
A. I know of my own knowledge what the whole thing was on this estimate, because when we run this estimate and we got through with the estimate, when we finished this job here there was a slight amount like fifty or a hundred and fifty dollars, that our labor estimate ran over this, and I told the secretary to just stay with the estimate. That’s my words.
Q. You know it cost at least that much to repair it?
A. Yes, sir, I’m positive of that, but I told her to stay with the estimate, not to go over it.
Q. All right, and everything that was listed on the estimate was done?
A. Was done, and it’s noted in the aircraft logbook.”
We find that the above quoted testimony of Mr. Mitchell adequately establishes that the Bellanca estimate is identical in amount and contents to what would have been shown on the repair bill had it been produced. Under the jurisprudential rule that when damage has been repaired the proper basis for determination of the amount to be assessed is the repair bill, we hold that the testimony of Mr. Mitchell, the man who undertook the repairs, to the effect that the estimate accurately reflects the amount of the repair bill is sufficient proof upon which to base the assessment of damages.
*883 Defendant cites the case of Dikert v. Ruiz, 231 So.2d 633 (4th La.App.1970) in support of its contention that the estimate alone is not competent proof of damages. In that case the contractor who prepared the estimate of repairs to a dwelling did not testify at the trial and his estimate was held to be inadmissible hearsay when offered to prove the cost of the repairs. In the case at bar Mitchell, who actually prepared the estimate and supervised the repairs, testified that the amount charged for the repairs was exactly the same as his estimate.
Defendant’s second contention relating to the proof of damages is that plaintiffs were bound by the insurance policy provisions to bring forth evidence in the nature of time cards, invoices, work orders and bills to show the actual cost of the repairs. The applicable provisions of the policy read in pertinent part as follows:
“Coverage G — All Risks While in Motion. To pay for direct and accidental loss of or damage to the aircraft, hereinafter called loss, occurring while the aircraft is in motion under its own power or the momentum generated therefrom, or while the aircraft engine is operating, including fire or explosion caused by or resulting from collision of the aircraft with any object and including disappearance if the aircraft is missing and not located within sixty (60) days after takeoff.”
* * * * * *
“10. Limit of Liability; Coverages F and G. In the event of total loss, the Company will pay to the Insured the amount of insurance specified in the Declarations, less deductible, if any.
In the event of partial loss, the Company’s liability shall not exceed the actual cost to repair the damaged property with parts and material of a like kind and quality, less discounts, if any. In no event shall the Company’s liability for partial loss exceed the amount for which the Company would be liable if the aircraft were a total loss, and the Company may at its option, declare any partial loss to be a total loss. Such cost shall not exceed the actual cost to the Named Insured for material, parts and labor (excluding charges for overtime) and transportation charges as evidenced by bills rendered to the Named Insured less any discount granted to the Named Insured. When repairs are effected by the Named Insured, an amount equal to 50% of actual wages paid, excluding charges for overtime, shall be added for overhead. Transportation charges (by the least expensive means of reasonable transportation) shall not exceed the cost of transporting new or damaged parts or of transporting the damaged aircraft to the place of repair and return to the place of accident, or to the Named Insured’s home airport, whichever is nearer. * * * ” (Emphasis added.)
In view of our determination that the Bellanca estimate, as explained by the testimony of Mr. Mitchell, reflects the actual cost of the repairs made by Bellanca, we feel that the introduction of evidence such as time cards, invoices, work orders and the like would have been merely cumulative in nature. The cost of labor, parts and materials as stated in the Bellanca estimate accurately reflects the actual cost to the named insured, plaintiffs, for the repair of this aircraft. Therefore, we hold that the plaintiffs have complied with the provisions contained in the insurance policy, quoted above.
The District Court awarded damages based upon the Bellanca estimate, which was the higher of the two estimates submitted in this case. Defendant asserts that the trial court erred in not accepting the Harvey estimate, the lower of the two, as the proper amount of damages to be allowed.
*884 In passing on this issue below the trial judge in his oral reasons for judgment stated:
“After listening to the evidence from both Mr. Harvey and Mr. Mitchell, who was the service manager for Bellanca Aircraft Company, the Court feels that the Mitchell or Bellanca estimate was the more reasonable one and the more thoroughly substantiated insofar as a much more thorough examination was given the aircraft by the Bellanca people than was given by Mr. Harvey. The plane was not taken off the trailer when Mr. Harvey and Mr. England, from the adjustment company, were making their estimates. Mr. Harvey clearly and honestly testified to the court that he did not see certain damage and that he did not look into the fuselage or the wings, and the reason he didn’t was because he saw no external evidence of any structural damage in these parts. When Mitchell’s people examined it they did go into it thoroughly and found evidence of structural damage in the wings and fuselage, landing gears, engine mounts, et cetera, and their examination was much more thorough.”
When the trial court is confronted with two varying estimates, it is within the Court’s discretion to accept either the higher or lower of the estimates and assess damages based upon all the facts and circumstances of the case. Jackson v. Fireman’s Fund Insurance Company, supra.
After reviewing the testimony and evidence in this case, we cannot say that the trial court abused this discretion by allowing recovery based upon the higher of the two estimates.
Therefore, for the above reasons the judgment of the District Court is affirmed at appellant’s cost.
Affirmed.